## HERBERT STEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 20947. Promulgated March 29, 1950.

*George E. McMurray, Jr., Esq.,* for the petitioner.
*Sanford M. Stoddard, Esq.,* for the respondent.

498

OPINION.

TURNER, *Judge*: The question here is whether the $25,000 in war bonds awarded to petitioner by Pabst was taxable income within the meaning of the Internal Revenue Code. By the Sixteenth Amendment to the Constitution, Congress was given the power to lay and collect taxes on incomes "from whatever source derived." Thereafter the Supreme Court, in considering the scope of the power of Congress to tax as expanded by the Sixteenth Amendment, said that "income may be defined as the gain derived from capital, from labor, or from both combined." *Eisner* v. *Macomber*, 252 U. S. 189. Congress, in the exercise of its power under the Sixteenth Amendment to lay and collect taxes on incomes and in specifying the income subject to tax, prescribed that gross income "includes gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever." Sec. 22 (a),

I. R. C. And, in that connection, it has been said that "The broad sweep of this language indicates the purpose of Congress to use the full measure of its taxing power within those definable categories." *Helvering* v. *Clifford*, 309 U. S. 331.

That the war bonds received by petitioner from Pabst represented gain to him from labor and therefore income within the Supreme Court's definition of income and represented "gains, profits, and income * * * or compensation for personal service, of whatever kind and in whatever form paid, or from professions, vocations, trades, * * *" may not, it seems to us, reasonably be disputed. The petitioner had studied, worked, and trained to be an economist and he had entered into the exercise and practice of that profession. His attention was directed to an advertised offer by Pabst of awards totaling $50,000 for the 17 best plans which might be submitted on postwar employment. The prospect was alluring to petitioner and, whatever his dominant motive might have been, he decided to exercise his skill and knowledge as an economist and to devise, work out, and offer such a plan and enter in the competition. In such work and exercise of his professional knowledge and skill he devoted approximately 80 hours of his time, a period of two standard work weeks. He completed and submitted his plan and in return therefor he received the top award, war bonds of a cash value of $25,000. That the petitioner was not a regular employee or an employee at all of Pabst and the endeavor was in the form of a competition where the entries ran into the thousands and his chances of being one of 17 to whom awards were given were quite remote, in no way changes the nature and character of the award when received from gain, compensation, or income from labor or the exercise of his professional training and skill to something else. It would be as reasonable to conclude that the award to the winning architect in a competition for design for a building or to an engineer in a competition for the winning design for a bridge would not be income to them because there would be a very good possibility that they would not be winners and that, except for the benefits derived as experience from working at their profession, they would receive no return for work and labor expended.

It is argued further, however, that the award was a gift from Pabst to petitioner and that, since gifts are specifically excluded from income by section 22 (b) (3),[1] the award in this instance was not income within the statute as enacted. In this connection most of what was offered in the course of the argument on the point above was likewise stressed, and great reliance was placed on the conclusion reached by the Court of

---

[1] (b) EXCLUSIONS FROM GROSS INCOME.—The following items shall not be included in gross income and shall be exempt from taxation under this chapter:

* * * * * *

(3) GIFTS, BEQUESTS, DEVISES, AND INHERITANCES.—The value of property acquired by gift, bequest, devise, or inheritance. * * *

Appeals in *McDermott* v. *Commissioner*, 150 Fed. (2d) 585. It is pointed out, for instance, that Pabst was in the business of brewing and selling beer and not in the business of working out economic problems such as that which provided the subject for the papers submitted. It is said that the petitioner had no thought or idea of selling anything, either the paper or his services to Pabst. There is the suggestion that possibly the dominating motive was the anticipation of the pleasure and satisfaction of working out some thesis on an intriguing economic problem. There is also a suggestion that the purpose of the competition and the objective sought to be accomplished was in the public interest and for that reason there should be no thought or suggestion of either the money as used by Pabst or the bonds as received by petitioner being subject to a Federal tax; that really and truly the thought and endeavor here was in the field of education and that Congress did not intend to burden such funds with a tax. Some of the statements or thoughts appearing in the Court's opinion in *McDermott* v. *Commissioner, supra,* do seem to give color and support to the theories advanced in the petitioner's behalf. With all due respect to the court in that case, we find ourselves unable to follow it to its conclusion that the scope and meaning of income as it appears in the Sixteenth Amendment and in the Congressional enactment is so restricted, but, even if we are wrong in presuming so to conclude, the *McDermott* case is rather plainly distinguishable from the instant case when certain of the thoughts and pronouncements of the court there are applied to the facts here.

In the first place the court in the *McDermott* case seemed to have been greatly influenced by the fact that the work done there was in the field of learning and education and that that fact, for some reason, made a difference in the case of an award or compensation received by someone laboring to produce a treatise or discourse on a given subject. The suggestion was also made that Congress had very plainly intended to exempt educational and charitable gifts and to conclude that the recipient of an award or prize for labor and effort along that line would be subject to tax thereon would in some way defeat the will of Congress. In that connection reference was made to section 101 (6) of the Internal Revenue Code. Turning to the code, it is interesting to note, however, that Congress exempted in the religious, charitable, scientific and educational fields only corporations, community chests funds, or foundations. At no place is there any provisions exempting individuals, but, to the contrary, it is plainly shown that where the funds, gifts or donations inure to the benefit of a private shareholder or an individual the exemption does not apply. Any suggestion or thought that the mere fact that the money received by the ultimate recipient was supplied by way of gift or donation is alone sufficient to indicate or supply a basis for holding that as to the recipient the

amount received was not income is, in our judgment, clearly outside the statute. One person may, for instance, by way of gift supply the money to pay some needy person for mowing the grass in his friend's yard, but no one would suggest that the money received by the mower of the grass was not to him income. Thousands of people every year make contributions to community funds and foundations and, even though as to the donors they are admittedly gifts, no one, we think, would seriously argue that individuals engaged and employed in administering charity and supervising and directing the recreational activities of others and who are paid from these gifts and donations did not receive income within the meaning of the Constitution and the statute. It is accordingly our view that in the *McDermott* case, as well as in the argument here, too much importance was placed on the question whether the original furnisher of the money intended to make a gift and too little attention was paid to the question whether there was as to the recipient gain or compensation from labor or work at a business or profession.

As suggested above, however, it is our opinion that this case fails to come within the scope of the *McDermott* case as decided by the court in that there the court did find on the part of the furnisher of the funds a donative intent and from that concluded that the money as given and as received was a gift specifically excluded by Congress from gross income, while here no such intent is shown. In this case the record does not show specifically the characterization of the expenditures by Pabst on its books, but, however they were denominated, it is clear that Pabst did not regard them as gifts. Unlike the situation in *Bogardus* v. *Commissioner*, 302 U. S. 34, where the payor did not treat as expenses the payments held to have been gifts, but charged them directly to surplus, Pabst treated the amount of the awards, including the $25,000 paid for the war bonds awarded to petitioner, as an expense of conducting its business for its current taxable year. Such treatment certainly indicates that Pabst did not regard its award as the making of a gift. In that connection the facts and circumstances surrounding the offering of the award and the terms and conditions imposed by Pabst are enlightening. While we think it may reasonably be said that Pabst did regard the scheme as being something which would be in the public interest, Pabst carefully prescribed that it should be the owner of the manuscripts and have all rights to publish and distribute them. The plan was initiated as a part of the activities of Pabst in the observance of the one-hundredth anniversary of the founding of its business. Pabst was seeking to publicize and show to the public its long life and success in a business way and it reserved to itself all rights which to that end would enable it to make the most of the plans submitted. Pabst was a commercial corporation, engaged in business for the purpose of producing income for the benefit of its

stockholders. In the literature announcing and publicising the competition, the name "Pabst" or "Pabst Brewing Company" appeared prominently and frequently. In addition the booklet containing the 17 plans for which awards were made, and which appears to have been printed for free distribution, also bore the "Pabst Blue Ribbon" trade name. The entire undertaking seemingly was a part of Pabst's advertising program. Under such circumstances we could not reasonably conclude that Pabst launched the plan with an entirely donative intent or that the scheme was purely for the purpose of the educational development of the participants, particularly the winning entrants or solely for the public benefit. In that situation the case fails in some of the tests applied by the court in the *McDermott* case. The petitioner did not receive a gift, but realized gain or compensation for labor or in the practice of his profession.

The remaining issue is whether the respondent erred in disallowing the deduction of $2,500 taken by the petitioner for editorial assistance rendered by his wife in the preparation of the manuscript embodying his plan. At the hearing and on brief the petitioner took the position that, if the $25,000 received by him is held to be taxable income, then it should be held that it was earned by both him and his wife and should be allocated between them and taxed to them on the basis of 10 per cent to her and 90 per cent to him. No contention is made by the petitioner that he employed his wife to assist him in the preparation of his manuscript, agreeing to pay her $2,500 or any other amount for her services, and that a deduction of $2,500 should be allowed him for having paid her under that employment.

The petitioner's entry in the competition was made as his own and not jointly as his and his wife's, as the rules would have permitted. The award was made to him and to him alone. He testified that at the time his wife was assisting him in the preparation of his manuscript there was no agreement as to who would own the award, should one be received, that there was no thought or agreement between them concerning any division of the award prior to the time they prepared their 1944 income tax returns and the question of a division then became relevant only because of the question of payment of tax. That testimony negatives any thought of a partnership or a joint venture relationship between them respecting the entry and consequent award.

The petitioner further testified that the $2,500 deducted by him and reported by his wife, or one-tenth of the amount of the award, was the portion which they, at the time they prepared their income tax returns, decided was attributable to the wife's services in the preparation of the petitioner's manuscript. He did not state the basis on which they reached such a decision or give any explanation as to how that amount was ascertained. The case of *Max German*, 2 T. C.

474, relied upon by petitioner, is distinguishable. The award having been made in whole to the petitioner for the plan submitted by him and no basis having been shown for attributing any portion thereof to the services of the petitioner's wife, we conclude that the entire $25,000 was the income of the petitioner.

If it should be assumed that petitioner owed compensation to his wife for services rendered and the only obstacle to the granting of a deduction therefor was as to amount, then some approximation under the principle of *Cohan v. Commissioner*, 39 Fed. (2d) 540, might be indicated. Here, however, other obstacles bar the deduction. There is no evidence of any agreement between the petitioner and his wife that she was to receive compensation and, aside from some general understanding that the earnings of both spouses constituted family income, it does not appear that there was any thought that any part of the award was her separate income, as compensation or otherwise, until the time of or for the purpose of reporting and paying income tax. Furthermore, there was never any payment of compensation to her and, even if there had been an agreement to pay compensation, the deduction would not be allowable in the absence of actual payment, under section 24 (c) of the Internal Revenue Code, the petitioner and his wife being persons between whom losses would not be allowed under section 24 (b).

Reviewed by the Court.

*Decision will be entered for the respondent.*

Van Fossan, *J.*, concurs only in the result.