Frederick V. Waugh and Irma W. Waugh v. Commissioner.
Waugh v. Commissioner
Docket No. 22208.
United States Tax Court
1950 Tax Ct. Memo LEXIS 229; 9 T.C.M. (CCH) 309; T.C.M. (RIA) 50095; April 5, 1950
*229 Petitioner, a professional economist, received a prize of $1,250 for an essay on the subject "Farm Price Policies" in a contest conducted by the American Farm Economic Association, a tax-exempt organization, out of funds supplied to the Association for such a contest by a private individual. Held, the award was not a gift to petitioner under section 22(b)(3), Internal Revenue Code, but constituted gross income to him under section 22(a) of the code. Frederick V. Waugh, *230 for the petitioners. Sanford M. Stoddard, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: Respondent determined a deficiency of $409.71 in income tax for the calendar year 1945. The sole issue is whether the sum of $1,250, received by petitioner Frederick V. Waugh (hereinafter referred to as petitioner), as an award in an essay contest conducted by the American Farm Economic Association, constitutes gross income under section 22(a), Internal Revenue Code, or is excludable from gross income and exempt from taxation as a gift under section 23(b)(3) of the code. A portion of the facts has been stipulated and is incorporated herein as part of our findings of fact. Findings of Fact In January 1945, the American Farm Economic Association received an offer from one W. H. Jasspon, 727 Beale Avenue, Memphis, Tennessee, to make available the sum of $12,500 to the Association to be used for prizes in a contest to be sponsored by the Association on the general topic, "A Price Policy for Agriculture." The Executive Committee of the Association accepted the offer and the following contract was executed between the *231 Association and W. H. Jasspon: "The Executive Committee of the American Farm Economic Association hereby accepts in the name of the Association, the sum of $12,500 from W. H. Jasspon. "The American Farm Economic Association allots, not to exceed $2,500.00 toward the cost of administering this project. "It is mutually understood that this sum of $12,500.00 is to be used in conducting a contest for the best papers on the subject 'Farm Price Policies'. This contest is to be sponsored by the Association, and conducted under the control of its Executive Committee. "The conditions governing the holding of the contest are contained in the attached memorandum which is hereby made a part of this agreement. "Signed the 3rd day of February, 1945. "The American Farm Economic Association
"per L. H. Norton, President "W. H. Jasspon, Donor" In 1945 the American Farm Economic Association enjoyed exemption from taxation under the provisions of section 101(1) of the Internal Revenue Code, as amended. Under date of April 26, 1949, the Association was granted exemption from taxation, including exemption for all prior taxable years, under the provisions of section *232 101(6) of the code, as amended. Pursuant to the agreement hereinbefore set forth, the Association announced a contest on the following topic: "A Price Policy for Agriculture, Consistent with Economic Progress, That Will Promote Adequate and More Stable Income from Farming." A folder describing the contest and containing the rules was prepared and sent to all members of the Association and to others upon request. Several thousand copies were distributed. Announcement was also made in the public press and in farm papers, and was carried in the Journal of Farm Economics, which is the official organ of the American Farm Economic Association, and in several other journals published by associations in the social science field. The contest first came to the attention of petitioner through the Journal of Farm Economics. The announcement that appeared in the May 1945 issue of the Journal of Farm Economics read as follows: "FARM PRICE POLICY AWARDS "The American Farm Economics Association is sponsoring a series of awards for papers dealing with parity prices and post-war price policies for agriculture. FIRST AWARD
$5,000
SECOND AWARD
2,500
THIRD AWARD
1,250
FIFTEEN AWARDS OF
250 each
*233 "The first three awards will be made only for papers that deal with the broad question of an agricultural price policy, including suggestions for the development of adequate price programs for agriculture. The fifteen awards of $250 each may also be made for papers that deal only with improvement in the parity price formula, or are limited to discussions related to prices of any one important product or a group of related products. "Each statement is limited to 3000 words. Additional explanatory material may be submitted. All manuscripts must be received in the Office of the Secretary-Treasurer of the Association not later than August 1, 1945. "The Panel of Judges are: Chester C. Davis, President, Federal Reserve Bank, St. Louis, Missouri
W. W. Waymack, Editor, The Register and Tribune, Des Moines, Iowa
Henry O. Tayler, Managing Director, The Farm Foundation, Chicago, Illinois
W. I. Myers, Dean, College of Agriculture, Cornell University, Ithaca, New York
Alvin H. Hansen, Littauer Professor of Political Economy, Harvard University, Cambridge, Massachusetts
"All inquires and submittals should be addressed to: Asher Hobson, Secretary-Treasurer American Farm Economic *234 Association University of Wisconsin, Madison, Wisconsin." A total of 317 papers was submitted in the contest. The petitioner submitted a paper in the contest which was mailed either from his home in Virginia or from his place of employment in the District of Columbia, to the secretary-treasurer of the American Farm Economic Association at Madison, Wisconsin. As they were received by the secretary the papers were coded numerically in order of receipt and by states. All people who subsequently handled the papers worked from those numbers and did not know who wrote the individual papers. The paper submitted by the petitioner was selected by the judges for the third award of $1,250. This and the other awards were announced at a dinner at Washington, D.C., on September 11, 1945. The winning papers, including the petitioner's paper, were published in the November 1945 issue of the Journal of Farm Economics. These papers were not copyrighted. In submitting his paper petitioner did not sign any release giving any rights in the paper either to the American Farm Economic Association or to any other person or agency. He understood informally at the time of the contest that some of the *235 papers would probably be published in the Journal of Farm Economics. The petitioner received payment of the $1,250, representing the third award, by check which was mailed to him by the secretary of the Association from Madison, Wisconsin. The following expenses were incurred in the conduct of the contest by the American Farm Economic Association: Printing
$223.49
Postage
57.50
Judges' expenses
485.67
Travel, President
105.79
Travel, Secretary
16.96
$889.41
In a foreword to the publication of the award papers, the president of the Association made the following statement: "The winning papers are published in this volume. It is to be hoped that their publication will stimulate thinking, discussion, and further writing on this important topic, and that among them will be found ideas which may be useful to legislative and administrative authorities in developing programs which will carry on the objectives set out in the title of the contest." In the report of the president at the annual business meeting of the American Farm Economics Association on December 28, 1945, the following comment on the contest was made: "The question may be asked: Was *236 this contest worth while? I do not know. But I think it accomplished four things. (1) It brought our association to the attention of a lot of people and also revived interest in it on the part of many members. (2) It has served as a means of bringing together the ideas of a great many people on this important subject and it has, I believe, brought forcibly to the attention of many key people the fact that existing farm price policies are not fully approved by a considerable number of agricultural economists. The evidence on this point is the critical reaction in a number of quarters. (3) It should stimulate interest in this matter by many of our own group who have not previously given the matter serious attention. (4) It honored certain able men in our group and added to their reputation." Petitioner is a professional agricultural economist who has been active in the field since 1922. He holds the degrees of Bachelor of Science, Master of Science, and Doctor of Philosophy. He has taken an active part in various scientific and professional associations in the fields of agriculture, economics, and statistics and has written numerous papers for publication for the journals of such associations *237 without compensation. In the taxable year 1945 he was employed by the United States Government as an economist. Petitioner prepared the essay for the contest in two evenings, spending not over eight hours of time on it. In writing the essay he called upon his background as a professional economist to a considerable extent. Frederick V. Waugh filed a joint return with his wife, Irma W. Waugh, for the taxable year 1945 with the collector of internal revenue for the district of Maryland. In a statement appended to the return he brought to the attention of the collector that he had received the $1,250 award in the taxable year, but had not included the proceeds thereof in his gross income on the return. In the final determination of petitioners' income tax liability for the taxable year 1945, the Commissioner included the $1,250 as a part of petitioner's gross income for such year. Opinion It is petitioners' position that the case of McDermott v. Commissioner (C.A.D.C., 1945), 150 Fed. (2d) 585, reversing 3 T.C. 929, controls the issue here. In that case the American Bar Association (which the court there labeled an "educational or other charitable trust"), *238 awarded a prize of $3,000 to the taxpayer McDermott, a professor of law at Duke University, for an essay on a legal subject. The award was made out of a fund, or the income thereof, supplied to the Bar Association for an annual essay prize under the will of the late Erskine M. Ross, a retired Federal judge. The court held that the prize did not constitute a payment for services, so as to be taxable to the recipient as income, but was a gift excludable from gross income. In the instant case the American Farm Economic Association, a nontaxable agricultural and educational organization, awarded a third prize of $1,250 to petitioner, an economist, for an essay on the subject "Farm Price Policies." The award was made out of funds given to the Association by one W. H. Jasspon for an essay contest on that subject. The question here, as in the McDermott case, is whether the prize constituted income to the recipient under section 22(a), Internal Revenue Code, [1] or was a gift and not taxable under section 22(b)(3), of the code. [2]
*239 Though the facts in the two cases are closely parallel, in our view the cases are distinguishable in one important respect. In the McDermott case the court found, on the facts before it, that the purpose of the American Bar Association was donative, that the American Bar Association "neither derived nor sought any profit from the contest or from petitioner's participation in it," and that "the entire advantage accrued to petitioner and the community." Here, however, it is our conclusion that the intent of the American Farm Economic Association in conducting the contest was not purely donative and that it did derive benefit from the contest. In fact, it seems patent that in conducting the contest the Association hoped to and did promote the interest in itself and in American farm economics, interest in which, we may say without undue surmise, is doubtless one of the objectives of such an organization. In its announcement of the contest, the Association described the topic in these words: "A Price Policy for Agriculture, Consistent with Economic Progress, That Will Promote Adequate and More Stable Income from Farming." In a foreword to the publication of the award papers, the *240 president of the Association made the following statement: "The winning papers are published in this volume. It is to be hoped that their publication will stimulate thinking, discussion, and further writing on this important topic, and that among them will be found ideas which may be useful to legislative and administrative authorities in developing programs which will carry on the objectives set out in the title of the contest." Also, in the report of the president at the annual business meeting of the American Farm Economic Association on December 28, 1945, he stated that in his opinion the contest accomplished four things: "* * * (1) It brought our association to the attention of a lot of people and also revived interest in it on the part of many members. (2) It has served as a means of bringing together the ideas of a great many people on this important subject and it has, I believe, brought forcibly to the attention of many key people the fact that existing farm price policies are not fully approved by a considerable number of agricultural economists. The evidence on this point is the critical reaction in a number of quarters. (3) It should stimulate interest in this matter *241 by many of our own group who have not previously given the matter serious attention. (4) It honored certain able men in our group and added to their reputation." To be sure, the Association may neither have derived nor sought any pecuniary profit from the contest. But no one would argue that compensation paid to college professors or Red Cross officials, let us say, is nontaxable because the services are rendered to nonprofit and tax-exempt organizations to help carry out the purposes of these organizations. It is therefore our conclusion that in awarding the prize here under consideration, the American Farm Economic Association did not intend to and did not make a gift within the meaning of the statute. It may be contended that some, perhaps much, of what we have said might also have been said of the award given by the American Bar Association in the McDermott case, where, on the facts before it, the court held that the American Bar Association did intend to and did make a gift of the award. We have set forth the facts here which have led us to conclude as we have. If those facts do not distinguish this case from the McDermott case, then, with due deference to the court in that *242 case, we must respectfully announce ourselves unable to follow its decision. As to the original donor of the money, W. H. Jasspon, we will readily admit that he did intend to and did make a gift of that money. But, as we said in the recent case of Herbert Stein, 14 T.C. 494, promulgated March 29, 1950: "* * * Any suggestion or thought that the mere fact that the money received by the ultimate recipient was supplied by way of gift or donation is alone sufficient to indicate or supply a basis for holding that as to the recipient the amount received was not income is, in our judgment, clearly outside the statute. One person may, for instance, by way of gift supply the money to pay some needy person for mowing the grass in his friend's yard, but no one would suggest that the money received by the mower of the grass was not to him income. * * *" Having concluded that the award made to petitioner for his essay was not a gift to him, the question remains whether it represented "gain derived from labor" within the meaning of the definition of income first given in Eisner v. Macomber, 252 U.S. 189, 207, and within section 22(a) of the code. In Herbert Stein, supra, *243 we held that the amount received by the taxpayer in that case, an economist, for a prizewinning plan for postwar employment in the United States, in formulating which he used his professional skill and knowledge, did constitute income within the above quoted definition and within section 22(a) of the code. Here petitioner is also an economist and he used his professional skill and knowledge in writing his prize-winning essay, which was in the field of economics. As we said in the Stein case, that the award "represented gain to him from labor and therefore income within the Supreme Court's definition of income and represented 'gains, profits, and income * * * or compensation for personal service, or whatever kind and in whatever form paid, or from professions, vocations, trades, * * *' may not, it seems to us, reasonably be disputed." We set forth at some length in the Stein case our reasons for that conclusion, and certain reservations concerning the decision in McDermott v. Commissioner, supra. Without further repetition, we may say that those reasons and reservations are controlling here. Accordingly, Decision will be entered for the respondent. Footnotes
1. INTERNAL REVENUE CODE. SEC. 22. GROSS INCOME. (a) General Definition. - "Gross Income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * *, of whatever kind and in whatever form paid, or from professions, vocations, trades, business, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. * * * ↩
2. (b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *
(3) Gifts, Bequests, Devises, and Inheritances. - The value of property acquired by gift, bequest, devise, or inheritance. * * *↩