### AMIRIKIAN v. UNITED STATES et al.

#### Civ. No. 4869.

United States District Court, D. Maryland.

July 6, 1951.

Jack C. Merriman and Robert L. Weinberg, of Baltimore, Md., for plaintiff.

Frederick J. Green, Jr., Asst. U. S. Atty., Baltimore, Md., for defendants.

WILLIAM C. COLEMAN, Chief Judge.

This is a suit for the refund of income taxes paid by plaintiff for the tax year 1942 in the amount of $1,622.85. The only question at issue is whether $6,850, which the plaintiff had received in 1942 as an award made by the James F. Lincoln Arc Welding Foundation for a paper dealing with the general subject of progress made by application of arc welding in industry, constitutes taxable income of the plaintiff.

Substantially all of the material facts in the case are embraced in a stipulation filed by the parties. It is therefore unnecessary to do more than summarize them very briefly, as follows:

Plaintiff, a resident of Maryland, is a civil engineer. While employed as a Designing Engineer in the Bureau of Yards and Docks of the Navy Department, in Washington, he was engaged in designing improved scientific methods for the construction of caissons or gates for naval dry-docks by the use of arc welding instead of riveting. Early in 1940 the James F. Lincoln Arc Welding Foundation announced a $200,000 industrial progress award program for papers or manuscripts dealing with subjects of progress made by application of arc welding in industry. The Foundation issued a booklet describing the rules and conditions for the contest and the various categories for some 458 separate awards. The plaintiff, together with another engineer in the Navy Department, prepared and entered this contest with a paper entitled "Welded Caissons for Naval Dry-docks", which was adjudged the winning paper of the contest, and plaintiff and his associate received from the Foundation the first grand award of $13,700, of which plaintiff received one-half or $6,850. In his 1942 income tax return he reported this as taxable income, but did so under protest and filed a claim for refund of the tax on this amount on the ground that he had received it as a gift and that it was not taxable as income. His claim, however, was formally rejected by the Commissioner of Internal Revenue, and this suit for refund followed.

The James F. Lincoln Arc Welding Foundation, which made the award to the plaintiff, is a philanthropic trust created in 1936 "to encourage and stimulate scientific interest in and scientific study, research and education in respect of, the development of the arc welding industry through advance in the knowledge of the design and practical application of the arc welding process". The Foundation is ex-

empt from federal income taxes, under Section 101(6) of the Internal Revenue Code, 26 U.S.C.A. § 101(6), as a foundation organized and operated exclusively for scientific and educational purposes, no part of its net earnings enuring to the benefit of any private shareholder or individual.

Thus there is presented the single narrow issue whether the award to plaintiff by the Foundation is taxable as part of plaintiff's "gross income" within the meaning of Sec. 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), or whether the award was a "gift" within the meaning of Sec. 22(b) (3), 26 U.S.C.A. § 22(b) (3). These two sections insofar as applicable to the present suit, read as follows:

"§ 22. Gross income

"(a) * * * 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service * * * of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property;

"(b) Exclusions from gross income. The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * *.

"(3) The value of property acquired by gift * * *".

The Government also relies upon the following part of section 29.22(a)–1 of Treasury Regulation 111: "What Included in Gross Income.—Gross income includes in general compensation for personal and professional services, business income, profits from sales of and dealings in property, interest, rent, dividends, and gains, profits, and income derived from any source whatever, unless exempt from tax by law. * * * In general, income is the gain derived from capital, from labor, or from both combined * * *."

It is the Government's position that where a taxpayer takes part in a contest such as the present one; complies with the conditions thereof and, as a result, wins a prize, he derives income that is taxable under the provisions above quoted. More specifically, the Government claims that the present plaintiff did not receive a gift, but compensation for time and effort expended in preparation of his winning essay, which was not prepared until after the award program had been announced. On the other hand, plaintiff contends that he neither sold the manuscript of his essay or any publishing rights in connection therewith to the Foundation, nor performed any services for it; that the only services which he performed were to industry, science and education; and that, therefore, since the announced purpose of the Foundation in conducting the award program was to give and incite, not to employ or to buy, what the plaintiff received was a gift.

In support of his position plaintiff relies primarily upon two decisions, McDermott v. Commissioner, 80 U.S.App.D.C. 176, 150 F.2d 585, a decision of the Court of Appeals for the District of Columbia, and Robertson v. United States, 93 F.Supp. 660, a decision of the Utah District Court. In the first of these cases it was held that a prize known as the Ross Essay Prize, which was awarded by the American Bar Association pursuant to a trust esablished by the will of a retired Federal Judge, was a gift and not taxable as income. The Commissioner of Internal Revenue had ruled otherwise and had been sustained by the Tax Court. The Court of Appeals said, 150 F.2d at page 587: "If a trust instrument should direct the trustee to make gifts out of income, in his discretion, to unnamed scholars, it would hardly be contended that the man selected by the trustee to receive a particular gift in a particular year would have to pay an income tax on it. If a trust instrument directs the trustee to make gifts out of income, in his discretion, to the unnamed authors of prize-winning essays, these gifts stand on the same footing. Trust income which is to be used exclusively for charitable or educational purposes is specifically exempted from taxation even to the trustee. To tax it to a beneficiary who receives it as a gift from the trustee would defeat the plain purpose of that exemption. It would also defeat both the purpose and the letter of § 22(b)

(3) of the Internal Revenue Code, 26 U.S. C.A., Int.Rev.Code, § 22(b) (3), which excludes from gross income 'the value of property acquired by gift.' A single gift is not income to the donee merely because it is expressly made out of the income of the donor.

\* \* \* \* \* \*

"We think the following circumstances taken together require the conclusion that the award was a gift and not income within the meaning of the statute. (1) No one not talking law would be likely to say that the Association paid petitioner $3000 for writing an essay or that it paid $3000 for the essay which petitioner wrote. In plain English the Association gave petitioner the prize. \* \* \* (2) The purpose of Judge Ross and the American Bar Association in creating and administering the Ross prize was likewise to 'give' and to 'incite,' not to employ or buy. (3) Money may be a gift in law as well as purpose although services are or have been rendered by the donee. (4) Whatever services petitioner rendered were not rendered to the trustee. The American Bar Association neither derived nor sought any profit from the contest or from petitioner's participation in it. On the contrary the entire undertaking was an expense to the trust; the entire advantage accrued to petitioner and the community. This among other things distinguishes the Ross prize from puzzles, guessing contests and publishers' contests operated for commercial purposes. Petitioner received 'financial advantages gratuitously.' (5) An important characteristic of gifts is that, unlike many sorts of 'income,' they cannot be counted upon in advance and may never recur. The Ross prize has this characteristic. It is therefore within the policy which exempts gifts of principal from taxation as income. (6) It is safe to say that the dominant motive of a normal contestant for this prize is not a hope of immediate financial gain. He does not regard himself as exchanging his services or his product for money. To one whose life is devoted to scholarship and whose position is affected by his scholarly output, the publication of an outstanding essay is its own reward and may lead to other rewards both tangible and intangible. No doubt the contest provides an added motive which may direct and more or less increase a scholar's effort, but this added motive is more a matter of prestige than of money. (7) The Commissioner does not say that taxes have ever been collected on Nobel prizes, Guggenheim fellowships, Rhodes scholarships, Ross prizes, or any of the many scholarships and prizes which, like these, have long been awarded on a competitive basis to scientists, scholars, or students. We think we may infer that the practice has been to the contrary. This long-continued administrative interpretation of the law is entitled to great weight. (8) Finally, requiring winners of scholarly awards to pay taxes on them would conflict with the wise and settled policy of encouraging scholarly work."

The second, the Robertson case, involved an award given by a philanthropist to a music professor for a prize-winning symphony. This philanthropist was also president of the Detroit Symphony Orchestra and in the year 1945 he announced a contest in which he offered three awards of $25,000, $5,000 and $2,000, respectively for the best symphonic works written by native-born composers of North, Central and South America. In the words of the donor, the broad purpose underlying the contest was "the furtherance of a spirit of understanding and unity among the Nations; and also to be helpful in bringing to the public the most important new music written in the Americas." [93 F.Supp. 661.] The taxpayer Robertson for several years prior to the announcement of this contest had worked on the composition of a symphony and completed it in 1939. He entered it in the contest; it was selected by the award committee as the best composition, and he was presented the award of $25,000 in 1947. Under the terms of the award, the taxpayer's musical composition remained his property but he granted to the Detroit Symphony Orchestra synchronization rights as applied to motion pictures, etc., and the right to first performance and to designate the publisher of the composition. Neither the donor of the award, the music award committee nor the Detroit

Symphony Orchestra derived any profit from the contest or the taxpayer's participation in it. The Commissioner of Internal Revenue ruled that the entire award was taxable as income. Robertson filed a claim for refund which was granted by the District Court, it finding (93 F.Supp. 662) that the taxpayer did not produce his composition "for the purpose of entering it in any contest neither for the purpose of selling it to Mr. Reichhold or to anybody else nor to produce income. It was the inspiration of an artist, his desire to do this creative work and was motivated dominantly and primarily for reasons other than monetary. On the other hand, Mr. Reichhold's purpose in announcing the contest and making the awards was to 'give'—not to employ or to buy or sell and the award made to the plaintiff was not in exchange for the right to capitalize on his opus."

The Government did not petition for a writ of certiorari in the McDermott case and the Robertson case was not appealed. However, the Government now takes the position in the present suit that the Robertson case is distinguishable in that there, the musical composition was finished some time before the announcement of the award contest which was not commercial in any sense and, therefore, it could not be said that money was the motive which dominated the preparation of the composition, contrary to what the Government claims is true with respect to the present plaintiff. As respects the McDermott case, the Government asserts that this was wrongly decided, and therefore should not be followed, relying primarily upon two decisions made by the Tax Court subsequent to the McDermott decision, namely, Stein v. Commissioner, 14 T.C. 494 and Waugh v. Commissioner, —— T.C. ——. In the Stein case the contest involved was conducted by the Pabst Brewery in celebration of its one hundredth anniversary. A prize of $25,000 was paid by the company for the best plan of post war employment in the United States. This award was held taxable as income. The Tax Court distinguished the McDermott case on the ground that Pabst used the contest for publicity in its business and did not treat the awards as gifts, but deducted them as ordinary business deductions in its own tax accounting. The Tax Court said, 14 T.C. 494, at pages 500–501: "Some of the statements or thoughts appearing in the Court's opinion in McDermott v. Commissioner, supra, do seem to give color and support to the theories advanced in the petitioner's behalf. *With all due respect to the court in that case, we find ourselves unable to follow it* to its conclusion that the scope and meaning of income as it appears in the Sixteenth Amendment and in the Congressional enactment is so restricted, *but, even if we are wrong* in presuming so to conclude, *the McDermott case is rather plainly distinguishable from the instant case when certain of the thoughts and pronouncements of the court there are applied to the facts here.*

"In the first place the court in the McDermott case seemed to have been greatly influenced by the fact that the work done there was in the field of learning and education and that that fact, for some reason, made a difference in the case of an award or compensation received by someone laboring to produce a treatise or discourse on a given subject. The suggestion was also made that Congress had very plainly intended to exempt educational and charitable gifts and to conclude that the recipient of an award or prize for labor and effort along that line would be subject to tax thereon would in some way defeat the will of Congress. * * * *Any suggestion or thought that the mere fact that the money received by the ultimate recipient was supplied by way of gift or donation is alone sufficient to indicate or supply a basis for holding that as to the recipient the amount received was not income is, in our judgment, clearly outside the statute.* One person may, for instance, by way of gift supply the money to pay some needy person for mowing the grass in his friend's yard, but no one would suggest that the money received by the mower of the grass was not to him income. Thousands of people every year make contributions to community funds and foundations and, even though as to the donors they are admittedly gifts, no one, we think, would

seriously argue that individuals engaged and employed in administering charity and supervising and directing the recreational activities of others and who are paid from these gifts and donations did not receive income within the meaning of the Constitution and the statute. *It is accordingly our view that in the McDermott case, as well as in the argument here, too much importance was placed on the question whether the original furnisher of the money intended to make a gift and too little attention was paid to the question whether there was as to the recipient gain or compensation from labor or work at a business or profession.*

*"As suggested above, however, it is our opinion that this case fails to come within the scope of the McDermott case as decided by the court in that there the court did find on the part of the furnisher of the funds a donative intent and from that concluded that the money as given and as received was a gift specifically excluded by Congress from gross income, while here no such intent is shown.* In this case the record does not show specifically the characterization of the expenditures by Pabst on its books, but, however they were denominated, it is clear that Pabst did not regard them as gifts. Unlike the situation in Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32, where the payer did not treat as expenses the payments held to have been gifts, but charged them directly to surplus, Pabst treated the amount of the awards, including the $25,000 paid for the war bonds awarded to petitioner, as an expense of conducting its business for its current taxable year. Such treatment certainly indicates that Pabst did not regard its award as the making of a gift. In that connection the facts and circumstances surrounding the offering of the award and the terms and conditions imposed by Pabst are enlightening. While we think it may reasonably be said that Pabst did regard the scheme as being something which would be in the public interest, Pabst carefully prescribed that it should be the owner of the manuscripts and have all rights to publish and distribute them. The plan was initiated as a part of the activities of Pabst in the observance of the one-hundredth anniversary of the founding of its business. Pabst was seeking to publicize and show to the public its long life and success in a business way and it reserved to itself all rights which to that end would enable it to make the most of the plans submitted. Pabst was a commercial corporation, engaged in business for the purpose of producing income for the benefit of its stockholders. In the literature announcing and publicising the competition, the name 'Pabst' or 'Pabst Brewing Company' appeared prominently and frequently. In addition the booklet containing the 17 plans for which awards were made, and which appears to have been printed for free distribution, also bore the 'Pabst Blue Ribbon' trade name. The entire undertaking seemingly was a part of Pabst's advertising program. *Under such circumstances we could not reasonably conclude that Pabst launched the plan with an entirely donative intent or that the scheme was purely for the purpose of the educational development of the participants, particularly the winning entrants or solely for the public benefit.* In that situation the case fails in some of the tests applied by the court in the McDermott case. The petitioner did not receive a gift, but realized gain or compensation for labor or in the practice of his profession." (Emphasis supplied.)

In the Waugh case, $12,500 was offered in varying amounts as prizes in a contest sponsored by the American Farm Economic Association for the best essay on farm price policies. Waugh's essay was awarded the third prize of $1250. He was a professional agricultural economist and in the year 1945 when he received the award, was employed by the United States Government. The Commissioner of Internal Revenue ruled that this award was taxable as part of Waugh's gross income and the Tax Court affirmed. In its opinion the Court said, in referring to the McDermott case (—— T.C. ——) "Though the facts in the two cases are closely parallel in our view the cases are distinguishable in one important respect. In the McDermott case the Court found on the facts before it, that the purpose of the American Bar Asso-

ciation was donative, that the American Bar Association 'neither derived nor sought any profit from the contest or from petitioner's participation in it' and that 'the entire advantage accrued to petitioner and the community.'

"Here, however, it is our conclusion that the intent of the American Farm Economic Association in conducting the contest was not purely donative and that it did derive benefit from the contest. In fact it is patent that in conducting the contest the Association hoped to and did promote the interest in itself and in American farm economics, interest in which we may say without undue surmise, is doubtless one of the objectives of such an organization. * * It may be contended that some, perhaps much, of what we have said might also have been said of the award given by the American Bar Association in the McDermott case, where, on the facts before it, the court held that the American Bar Association did intend to and did make a gift of the award. We have set forth the facts here which have led us to conclude as we have. If those facts do not distinguish this case from the McDermott case, then, with due deference to the court in that case, we must respectfully announce ourselves unable to follow its decision."

Neither the Stein nor the Waugh case was appealed. However, the Bureau of Internal Revenue has followed their ruling and not that of the McDermott and Robertson cases, and has declared that winners of the Ross Essay Prize for 1949 and future years will be held to have received taxable income, see I.T. 3960, 1949–2 Cumulative Bulletin 13; also I.T. 3987, 1950–1 Cumulative Bulletin 9, and this in spite of the fact that the Commissioner, as early as 1929, had ruled that Nobel prizes, Guggenheim fellowships, Rhodes scholarships and many other similar scholarships and prizes awarded to scientists and scholars were gifts and exempt from taxation. See G.C.M. 5881, VIII–1 Cumulative Bulletin 68.

We conclude first that the reasoning in the McDermott case is sound and second, that the facts in the present case, while of course not precisely the same as those in the McDermott case, nor in any of the other cases to which we have been referred, are sufficiently akin to those in the McDermott case to require the same holding. In that part of the opinion in the McDermott case which we have above quoted, the court enumerated eight circumstances which it held when taken together, require the conclusion that the award in that case was a gift and not income within the meaning of the same provisions of the Internal Revenue Code which govern the present case. We will not reiterate these eight circumstances but a reading of them makes it apparent that circumstances strikingly similar to those enumerated existed with respect to the award to the present plaintiff. We are not impressed with the attempt made by counsel for the Government to have us adopt the ruling of the Stein and Waugh decisions by the Tax Court instead of the decision of the Court of Appeals for the District of Columbia in the McDermott case. Suffice it to say in conclusion that it is unfortunate the Commissioner did not see fit to petition for certiorari in the McDermott case, in the absence of one or more of the decisions on which it relies being reviewed on appeal, before reversing its long followed ruling with respect to awards of the type here involved. "This long-continued administrative interpretation of the law is entitled to great weight", [150 F.2d 588] as was said by the Court of Appeals in its opinion in the above case and that "requiring winners of scholarly awards to pay taxes on them would conflict with the wise and settled policy of encouraging scholarly work." While it may be true that the present plaintiff has been or may be able to capitalize to a greater extent the winning of the award to him than McDermott has been or will be able to do with respect to his award, because the present plaintiff's winning essay related to a more commercial subject than the winning essay in the Ross competition, nevertheless, the difference is not sufficiently material, when tested by the indirect character of the possible profit ultimately to be derived in both cases, to warrant a distinction for tax purposes.

Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. § 22(a), which we have above quoted includes compensation for personal service * * * "of whatever kind and in whatever form paid", in the definition of "gross income". Thus a payment even though entirely voluntary, if made as compensation for services, is nevertheless taxable as income. But a payment cannot be both "compensation for personal service" within the meaning of Section 22(a) and a "gift" within the meaning of paragraph (b) 3 of the same section. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; Bogardus v. Commissioner, 302 U.S. 34, 58 S.Ct. 61, 82 L.Ed. 32. Cases often arise which require more careful analysis than other cases. In order to determine into which class they fall, we believe the present case presents a situation of this kind. In the McDermott case there was no commercial aspect whatsoever, directly or indirectly, such as would destroy the award's character as a gift. The American Bar Association neither derived nor sought any profit from this award to the taxpayer. On his part, the winner of the award rendered no "service" to the Association for which the award was given, within the meaning of Section 22(a), unless we torture the common sense meaning of the words used in that section. The same is true of the Robertson case. However, in the Stein case, the situation was entirely different. There, Pabst Brewery awarded the prizes with a very definite commercial motive, i. e., to help its business through the publicity inherent in the contest for the awards. It did not treat the awards as gifts, but deducted them as ordinary business deductions in its own tax accounting. We are not satisfied, however, that a similar situation was presented in the Waugh case. There the awards were offered by the American Farm Economics Association for the best essays on farm price policies. That Association enjoyed tax exemption just as does the Lincoln Foundation. We are not convinced from what is contained in the Tax Court's opinion that the Association's motive was other than donative.

The facts of the case now before us place it between the situation in the McDermott, Robertson and Waugh cases on the one hand, and the situation in the Stein case on the other, but very definitely more closely akin to the former than to the latter situation. It is true that the James F. Lincoln Arc Welding Foundation that made the awards was created by the Lincoln Electric Company in honor of its president, James F. Lincoln. It is also true that the Lincoln Company makes arc welding machinery. However, the Foundation is an entirely separate and distinct entity from the Lincoln Company. None of its trustees or officers are officers of that Company. While the Lincoln Company undoubtedly intended to and did derive some publicity from the awards, and perhaps indirectly some increase in the sale of its products, this does not permit us to ignore the fact that the Company was not the Foundation; that in the testimony in this case there is not the slightest intimation that the creation of the Foundation was an effort on the Company's part to circumvent the income tax laws. On the contrary, the Foundation has been recognized by the Internal Revenue Department as an entirely legal creation, exempt from federal income taxes because organized and operated exclusively for scientific and educational purposes, without profit to any private shareholder or individual. This is the crux of the present case. We therefore agree with what counsel for plaintiff has said, namely, that it is entirely illogical to maintain that it was Congress' intention, after exempting foundations whose income is used exclusively for scientific and educational purposes, to nullify this exemption after a gift has been made for such purposes, by taxing the recipient when there is no evidence whatsoever of any departure from the express purposes for which the foundation was exclusively organized and on the basis of which it, itself, has been granted federal income tax exemption. The present plaintiff rendered no "personal service" to the Foundation within the meaning of Section 22(a) of the Internal Revenue Code.

Judgment will be entered for the plaintiff in accordance with this opinion.