Robert F. and Elizabeth M. Doerge v. Commissioner.
Doerge v. Commissioner
Docket No. 31357.
United States Tax Court
1952 Tax Ct. Memo LEXIS 222; 11 T.C.M. (CCH) 475; T.C.M. (RIA) 52140; May 14, 1952
*222 Payments to a graduate student under the terms of a fellowship, held, not to be a gift but to constitute taxable income. Paul M. Newton, Esq., for the petitioners, and J. Marvin Kelley, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency of $41.26 in petitioners' income tax for 1949. By amended answer, the respondent claims an increased deficiency in a total amount of $91.96. By reply, petitioners admitted the mathematical accuracy of the deficiency claimed by amended answer but claim an over-payment of $50.70. The case was submitted on the pleadings and a stipulation of all of the facts. Petitioners did not file a brief. The stipulation is as follows: Petitioners are individuals who were husband and wife during all of the calendar year 1949, with principal residence at 2803 Cherry Lane, Austin, Texas. Their joint income tax return for that year was prepared on the basis of cash receipts and disbursements and was timely filed with the collector of internal revenue for the first district of Texas. Petitioner Robert F. Doerge was graduated from the University of Minnesota, Minneapolis, Minnesota, *223 in 1943, with the degree of Bachelor of Science. Beginning in 1945 and up to June, 1948, he engaged intermittently in graduate study at the University of Minnesota under fellowships established by the Minnesota Pharmaceutical Association, Lederle Laboratories, Inc., and Eli Lilly and Company, the latter having been awarded him for the school year 1947-1948. Under these fellowships, research was required to be performed by the recipient, and the subject matter of the research to be performed by petitioner Robert F. Doerge was determined in 1945 at the time of receipt of his first fellowship. All research done under each of the fellowships was devoted to the original objective. The research under the Eli Lilly and Company fellowship of 1947-1948 consisted of synthesizing and testing pharmacologically certain dithiobarbituric acid derivatives. In 1948, petitioner Robert F. Doerge was awarded by the University of Minnesota one of the Samuel W. Melendy Memorial Fellowships available for the school year 1948-1949, amounting in total to $1,000, which was to be paid in semi-monthly installments of $50 each. Pursuant thereto, and in addition to the salaries earned by both petitioners which *224 were properly reported on their joint return, petitioner Robert F. Doerge received from the University of Minnesota in the calendar year 1949 a total of $600, representing the semi-monthly payments during the first six months of the calendar year, from which no income tax was withheld by the University of Minnesota. The research performed by petitioner Robert F. Doerge under the Melendy Fellowship was a continuation of that performed under the Eli Lilly and Company Fellowship and was in furtherance of the general objective set in 1945. The work was done at the University of Minnesota and was in partial fulfillment of the requirements for the degree of Doctor of Philosophy. The Samuel W. Melendy Fellowship fund was established by the will of Mrs. Samuel W. Melendy, who died prior to 1943. The will provided, in part, as follows: "3. The residue of said income to be used for scholarships to be known as 'The Samuel W. Melendy Memorial Scholarships.' The scholarships shall have a fixed value and an objective to be attained by the student. Both the value and the objective shall be named by a committee that shall include the faculty of the College of Pharmacy." The Melendy Fellowship *225 is described in the bulletin issued by the University of Minnesota as follows: "Not more than three $1,000 fellowships without exemption from tuition, will be offered annually through this fund. The major study must be pharmaceutical chemistry or pharmacognosy and full time must be devoted to graduate study and research." A resolution adopted by the Board of Regents of the University of Minnesota on February 19, 1943, outlined the policy of the institution in regard to patents. The resolution provided, in part: "Now, Therefore, the Regents of the University of Minnesota in an effort to promote such research for the advancement of science and the economic and social welfare of the people, indicates its willingness to undertake such research in cooperation with outside persons and organizations within the limitations of its staff and facilities under the following general conditions: "1. That unless otherwise provided in the agreement patents shall be controlled by the University. "2. That the University will be willing to consider the granting of a non-exclusive license (shop rights) to the cooperative person or organization which provides funds for the direct and operating *226 overhead costs of the research. "3. That if the research undertaken by the University is a continuation of research already initiated by the cooperating person or organization, if the research results of the University require further development work for commercial application, or if for other reasons the public interest can thus be better served, the University will be willing to consider an exclusive license for a limited period (5 to 7 years of the 17-year patent life) or even for the life of the patent where it is clear that the public interest will be served, provided the University receives full reimbursement for all costs and a reasonable royalty with a minimum annual amount of such royalties guaranteed to insure that the patent is used by the licensee." Upon the completion of the work a thesis was written by petitioner Robert F. Doerge covering the research. There were no restrictions on the publication of the results of the research and no one was entitled to advance copies of the results prior to publication. Because no product or process which was deemed to be of commercial value resulted from the research, no patents were applied for or issued covering same. The *227 facts in this case, the legal questions that might be advanced, and the arguments that are, or might be, made are strikingly similar to those appearing in Ephraim and Libby K. Banks, 17 T.C. 1386 (promulgated February 28, 1952). The court therein decided that the payments made under the fellowship there in controversy constituted taxable income. We make the same ruling here. The Commissioner having duly made claim for an increased deficiency as required by law, is entitled to a judgment for $91.96. Clearly the monthly payments under the fellowship were made for valuable consideration moving to the grantor. They did not constitute gifts, either from the point of the grantor or the recipient (petitioner). The fellowship required full time services by the grantee. There was a fixed and stated objective of the research. The permission to the graduate student to make use of the results of the research was an incidental and non-controlling fact in the relationship under the contract of employment. It is to be remembered that the income tax laws are enacted to raise revenue and that they should be broadly construed to that end. Congress has used its powers under the Sixteenth *228 Amendment to the Constitution in full measure. Helvering v. Stuart, 317 U.S. 154. Exclusions and exemptions are exceptional and should be construed with restraint in the light of the general policy. $ Commissioner v. Jacobson, 336 U.S. 28, Helvering v. American Dental Company, 318 U.S. 322; see, also, Herbert Stein, 14 T.C. 494. The situation in Pauline C. Washburn, 5 T.C. 1333, is totally different and that case is no authority in the present instance. Decision will be entered for the respondent.