*Decision will be entered under Rule 50.*

ELMER J. FAUL AND SYBELL E. FAUL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56541.   Filed December 12, 1957.

*Francis Heisler, Esq.*, for the petitioners.
*Edward H. Boyle, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The sole question presented here is whether an informer's award received by petitioner Elmer J. Faul may be allocated ratably over a period of 3 years or more as compensation for personal services under the provisions of section 107 (a), I. R. C. 1939.[1]

For section 107 (a) to apply, at least 80 per cent of the total compensation must be received or accrued in 1 taxable year, the compensation must be for personal services, and the services must cover a period of 36 calendar months or more. The respondent concedes that the first requirement has been met but contends that the two remaining contingencies have not been satisfied.

A taxpayer who claims the benefit of section 107 must show that he comes squarely within the letter and spirit of the congressional grant. *Van Hook* v. *United States*, 204 F. 2d 25 (1953), certiorari denied 346 U. S. 825. We are not persuaded that petitioners have sustained this burden.

Petitioners urge that Faul began performing services for the Bureau of Internal Revenue in 1944.

The record shows that following 1942 Faul became alarmed about the tax practices of his employer. In 1944 he went to San Francisco to talk to "some Government man" for the purpose of determining what he might do to shield himself against possible future charges.

---

[1] SEC. 107. COMPENSATION FOR SERVICES RENDERED FOR A PERIOD OF THIRTY-SIX MONTHS OR MORE AND BACK PAY.

(a) PERSONAL SERVICES.—If at least 80 per centum of the total compensation for personal services covering a period of thirty-six calendar months or more (from the beginning to the completion of such services) is received or accrued in one taxable year by an individual or a partnership, the tax attributable to any part thereof which is included in the gross income of any individual shall not be greater than the aggregate of the taxes attributable to such part had it been included in the gross income of such individual ratably over that part of the period which precedes the date of such receipt or accrual.

Upon his return home Faul followed advice received in San Francisco and commenced to compile records so that he would have evidence to protect himself. He continued to make records during 1944, 1945, and 1946. In 1946 Faul was discharged by his employer, and in February 1947 he submitted a memorandum of alleged violations of internal revenue laws to the office of the collector of internal revenue in San Francisco.

There is no evidence either as to the identity of the "Government man" contacted by Faul in 1944 or that they conferred on any subject other than how Faul might protect himself. The record does not show that Faul identified his employer at this conference.

We conclude that petitioners have not shown Faul to have rendered any service to the Bureau of Internal Revenue before February 22, 1947. *Barker* v. *Shaughnessy*, an unreported case (N. D., N. Y., 1954; 48 A. F. T. R. 1301, 55–1 U. S. T. C. par. 9116).

Petitioners argue that even if Faul did not begin to furnish information until February 1947, nonetheless the statutory period of 36 months may be satisfied. To achieve this they must show that Faul's services continued until February 1950.

The record establishes that Faul supplied no information subsequent to the fall of 1947. Shurlock, the agent conferring with Faul, filed his report in July 1948. The case then went to conference. There is nothing to indicate that Faul ever met or had a conference with the conferee. The case was closed in 1950.

Shurlock visited Faul from time to time throughout 1948 and 1949; doubtless they discussed the case at great length. However, their discussion was limited to reminiscence and to when Faul would receive the reward.

Sybell, Faul's wife, was present when a conversation took place between Faul and Shurlock in 1950 or 1951, but could not recall whether Shurlock asked for additional information.

In May 1951 petitioners paid a visit to John Boland, an official in the collector's office at San Francisco. Sybell testified that Boland requested additional information. However, no evidence was submitted as to what was said, or that Sybell could even hear the conversation, other than that petitioners never saw Boland except in connection with the case. The discussion might well have concerned solely the reward petitioners were striving for. The record does not establish that Faul furnished any such additional information.

On September 10, 1951, William W. Parsons, Administrative Assistant Secretary, Treasury Department, wrote Faul, informing him that it had been necessary to request additional information from the field office in California and that Faul's case could not be concluded until that information was received at headquarters. There is no evidence

that Faul supplied any of this additional information or that, indeed, Parsons expected to obtain such information from any source other than the field office itself.

*Herbert Stein*, 14 T. C. 494 (1950), cited by petitioners, does not support their case. They cite only dicta in *Smart* v. *Commissioner*, 152 F. 2d 333 (1945). Other cases relied upon by petitioners may be distinguished on their facts.

Petitioners have not established that Faul performed services for the Bureau of Internal Revenue over a 36-month period and hence may not claim the benefit of section 107 (a).

*Decision will be entered for the respondent.*